## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLY MORROW, individually and as Guardian of the person and estate of A.B., | ) <br> ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    Case No. CIV-20-250-KEW <br> ) |
| McCURTAIN COUNTY INDEPENDENT SCHOOL DISTRICT NO. 11, also known as Valliant Public Schools; CRAIG WALL, individually; RACHAEL SMITH, individually; and SCOTT PRATT, individually, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Docket Entry #60), Defendant School District's Motion for Summary Judgment (Docket Entry #61), and the Individual Defendants' Motion for Summary Judgment (Docket Entry #62).[1] Upon review and consideration of the filings of the parties, this Court renders the following rulings.

---

[1]  In reaching its decision, this Court also considered the School District Defendants' Supplemental Brief in Further Support of Their Motions for Summary Judgment (Docket Entry #100) and Plaintiffs' Supplemental Response (Docket Entry #103) thereto. Because it was deemed unnecessary in reaching the decision, the Court did not consider Defendant School District's Second Supplemental Brief in Further Support of its Motion for Summary Judgment (Docket Entry #111) or Plaintiffs' Response in Opposition to School District's Second Supplemental Brief (Docket Entry #114).

## Facts Relevant to All Claims[2]

During the 2018-2019 and 2019-2020 school years, the relevant time period to this action, Defendant Craig Wall ("Wall") served as the Valliant School District's superintendent and as the executive officer for the Valliant Board of Education ("the Board"). Defendant Rachael Smith ("Smith") served as the School District's high school principal. Her duties at the high school included oversight of its overall functioning, the curriculum, the curriculum instructor/facilitator, student discipline, and education leader. Defendant Scott Pratt ("Pratt") served as the dean of students, athletic director, head football coach, power lifting coach, and the boys' track coach for the 2018-2019 school year. Pratt shared his dean of students' duties with Smith, and he reported to her for that position as well as for the positions of athletic director and football coach. He left the School District in May of 2019.

Plaintiff A.B. was a student at the School District during the 2018-2019 and 2019-2020 school years – he was a junior in 2018-2019, and he graduated in 2020. A.B.'s mother, Plaintiff Kimberly Morrow ("Morrow"), was appointed as guardian over A.B.'s person and estate in November of 2019. She was employed by the District

---

[2]    The Court's "Facts Relevant to All Claims" are compiled based upon those facts the Court deems material, undisputed (or not genuinely disputed), and supported by the summary judgment record. Those facts the Court deems irrelevant to the parties' motions are omitted herein.

during the time period relevant to this action, and she remains employed with the District today. At the time of the incident between A.B. and another student, K.C., Morrow served as the high school counselor, a position she had held since August of 2008. Morrow also is a certified career teacher under Oklahoma law and holds a valid state teaching certificate at certain grade levels for certain subjects.

A.B. has disabilities, including cerebral palsy with associated speech apraxia and a general intellectual impairment. He has difficulty with his fine motor skills, but his gross motor skills are well-developed, he has held a job at a grocery store, and he talks to his girlfriend on the telephone. As a student at the School District, A.B. was on an Individualized Education Program ("IEP") and enrolled in special education classes. His IEP did not require that he be assigned a paraprofessional at all times. His speech disorder can sometimes make him difficult to understand, and Morrow testified she sometimes asks A.B. to repeat things. A.B.'s IEP for November of 2019 to November of 2020 indicated his "communication has improved to the point that most often he can communicate effectively with family, teachers and peers."

As part of his IEP, A.B. also participated in athletics and a vocational rehabilitation program, which allowed him to assist the middle school janitor during his third hour class and clean

the gym area, including the locker and weight rooms, during his sixth hour class, until an off-campus position was available. One of the goals listed in his IEP was that "[A.B] will complete tasks that lead to increased independence."

Morrow testified that after school on February 20, 2019, A.B. told her that K.C. approached him and told A.B. "to take his penis out and shake it." A.B. told Morrow he did not comply because the request was "inappropriate." Following A.B.'s report, Morrow immediately reported the incident to the Valliant Police Department. She also notified Smith and Brandi Gross ("Gross"), who served as one of A.B.'s special education teachers.

Prior to the February 2019 incident between A.B. and K.C., Morrow testified A.B. had complained that K.C. would sometimes "jump at him" with his shoulders out. She also testified that on one occasion while A.B. was running laps, K.C. ran into A.B. in the gym and said, "You're pissing me off." Morrow told A.B. to tell Smith what happened, and Morrow mentioned the "jumping forward" incident to Smith and Gross.

Officer Dustin Franklin with the Valliant Police Department interviewed Morrow and A.B. at their home on February 20, 2019. Officer Franklin prepared an incident report, which reflected that the incident occurred in the boys' locker room of the high school gym. His report states that "[A.B.] attempted to tell me what took place but due to limitations with [A.B.] he is unable to speak

4

about the incident." The report then states:

> Morrow began telling me [A.B.] was in the locker room around 3 pm today when other students were also inside the locker room changing into gym clothes to begin basketball practice. [A.B.] was approached by another student he named as [K.C.] a student at Valliant High School. [K.C.] approached [A.B.] and told him to pull down his pants and shake it. [A.B.] did not do it and stated he didn't do it because it was inappropriate, while all the other students in the locker room begin laughing. [A.B.] stated [K.C.] jumped towards [A.B.] in an aggressive manner in an attempt to intimidate [A.B.] into pulling his pants down and [A.B.] still did not react to [K.C.].
>
> [A.B.] stated he was scared to tell anyone due to fear of [K.C.] trying to retaliate towards him for telling, and was scared for telling on [K.C.]. [A.B.] was informed he was not in trouble and was doing a good job for reporting what happened to him.
>
> Morrow stated she noticed a change in [A.B.'s] mental status as being scared and not leaving sight of Morrow, often being right beside Morrow who is his mother.
>
> Morrow who is a High School Counselor at Valliant Public Schools had made contact with her building princip[al], Rache[a]l Smith, Smith [c]ontacted School Superintendent Craig Wall. [A.B.] stated the [s]chool will be reviewing the incident which took place today at the school.
>
> At this time, Morrow does not wish to pursue charges on behalf of [A.B.], but wished to make an information report regarding today['s] incident which occurred at the [s]chool.

The report to Officer Franklin did not include a claim of sexual assault or physical contact by K.C.

The day after the incident, on February 21, 2019, Morrow and A.B. returned to school. K.C. was outside the building and Morrow testified A.B. was scared and he "went way around [K.C.]." Morrow

and A.B. were worried about his safety and requested a paraprofessional escort him to his classes, which Gross arranged for him. This only lasted approximately one month because, as described by Morrow, "once [A.B.] was in class, he was fine because he didn't have [K.C.] in those classes" and "an incident happened at school, and [A.B.] felt safer." The School District also allowed A.B. to have a paraprofessional with him during the last two hours of his school day - weightlifting and athletics. Morrow testified this lasted until the end of the school year. A.B.'s curriculum, courses, and programs did not change as a result of the incident.

Morrow testified that Gross told her the basketball coach called some of the basketball boys on the night Morrow made the police report. This is consistent with the School District's investigation materials, included in the record,[3] which indicate the basketball coach spoke to several students by telephone on February 20, 2019. Consistent with the testimony of Pratt, the School District investigation materials also show that permission was obtained from the students' parents prior to interviewing them and taking their written statements. Morrow testified that on February 22, 2019, she notified Gross and Smith that a student, M.J., witnessed the incident. Moreover, testimony supports that several students, including the alleged student witness, M.J.,

---

[3]    *See* Docket Entry #71-1; Docket Entry #72-1.

were interviewed by Smith in her office, with Pratt and Valliant Police Chief David Carroll present.

Pratt also testified he could not remember if K.C. was interviewed or if anyone in the weight room was interviewed. Pratt remembered that A.B. was interviewed and he did not remember Morrow being present, which is consistent with the School District's investigation materials that show A.B. was interviewed without Morrow on February 25, 2019.[4] Further, Wall's testimony that students were interviewed and provided statements, that it remained unproven after the investigation whether anything happened, and that a letter was sent to Morrow[5] is consistent with the investigation materials in the record, which include a statement by Smith detailing the investigation (and indicating that no evidence was found to corroborate the allegations), and a letter addressed to Morrow from Smith stating the matter had been investigated and no evidence was found to warrant disciplinary action against K.C.[6]

---

[4]    Plaintiffs contend Pratt did not know if Morrow gave permission for A.B. to be interviewed alone. The record, however, states that Pratt testified that Morrow "would have had to [give permission], in order for us to – to interview him." Docket Entry #67-7, p. 32. Moreover, Morrow's testimony was that she told A.B., "They're probably going to call you in to talk to you. But you just tell them everything you know." Docket Entry #67-1, p. 15.

[5]    See Docket Entry #66-6, p. 94.

[6]    Wall testified he did not have training in investigating sex crimes, Smith testified she did not have training in conducting interviews with a victim or witness to a sexual assault, and Pratt

On October 21, 2019, Morrow again questioned A.B. about the February 2019 incident, and A.B. provided new details. He told Morrow that K.C. "shook my penis," and when asked what happened, A.B. responded, "I peed." Morrow explained A.B. used the word "pee" to describe ejaculation. The best Morrow could understand from A.B., the incident happened during A.B.'s work hour in the weight room while he was sweeping. Morrow agreed she sometimes had problems deciphering what A.B. was saying, and she testified that his two reports of the incident and where it happened were not consistent or inconsistent, but "it was just part of [A.B.'s] communication problem."

On October 22, 2019, Morrow reported the new information to the McCurtain County Sheriff's Department ("Sheriff's Department"). Although she was told by the Sheriff's Department that she could wait to notify the School District until after its investigation was complete (and she indicated she planned not to), Morrow decided to report the new information to Smith on November 5, 2019, and later that same day by e-mail to other School District employees, including Wall. In the e-mail, Morrow disclosed that it

_____

testified he had not received training, other than yearly in-service training required for all educators, regarding investigations of Title IX issues. Pratt's testimony also revealed that his knowledge of certain details about the incident was incorrect, and he testified he knew nothing about Title IX. Pratt further testified he did not think K.C. did anything to A.B. Plaintiffs' factual assertion that Pratt referred to A.B.'s allegations as "a bunch of bullshit" to Wall is not supported by the citation to the record.

was her understanding "that another athlete, who I won't name at this time[,] witnessed this event." She also attached to the e-mail the report she had previously provided to the Sheriff's Department, which described the new allegations in more detail. Morrow further stated in the e-mail that the Sheriff's Office was handling the investigation and that A.B. should not be questioned by school staff or the Valliant Police Department. She indicated A.B. would participate in a forensic interview sometime that week.

Meanwhile, in October of 2019, the School District became aware that K.C. was accused of sexually assaulting a female student. On November 5, 2019, K.C. hit a teacher and was suspended. Although Wall testified K.C. had been "a troublemaker for his entire school career," he was not disciplined for the incident with A.B., because it was never proven what happened.

Morrow had previously received a stand-alone Professional Development Plan ("PDP") from Wall on December 17, 2015. Among other allegations, the PDP included that Morrow had failed in her "duty to report suspected abuse or mistreatment of District students to administration[,] and it included the expectation that in the future she would "be forthright and truthful with the administration" and that "[i]f you have a reasonable suspicion that District students are being abused or mistreated by District staff, or otherwise, you are to report such information to me immediately." Morrow's progress was reviewed by Wall on February

17, 2016, at which time she was found to have complied with the PDP. Morrow, however, was advised to "continue to comply with the terms of [the PDP] throughout [her] employment with the School District." Although the face of the PDP included a handwritten notation by Wall that it was dismissed on February 17, 2016, Wall testified the notation reflected only that he was no longer "going to meet with [Morrow] any more about that particular incident."[7]

To discover the identity of what the School District believed was a new witness, Wall scheduled a meeting with Morrow for November 7, 2019. Smith also attended the meeting as a witness.[8] Wall presented Morrow with a Directive instructing her to comply with the School District's request for information. She acknowledged her receipt of the Directive with her signature. The Directive referenced the December 2015 PDP, including the portion requiring Morrow to report information about suspected abuse or mistreatment of a District student to Wall or Smith and to continually abide by the PDP's requirements during her employment with the District. The Directive further addressed Morrow's

---

[7]    The PDP specifically states in its concluding paragraph that "[i]n the event that you make corrections upon receiving this PDP and then later become deficient in the same or related areas, you will not receive another Personal Development Plan/Admonishment. In that event, non-reemployment or dismissal proceedings will be initiated, based upon your failure to satisfactorily maintain your compliance with this PDP." Docket Entry #61-6, p.5.

[8]    Pratt did not participate in the November meeting because he was no longer employed by the School District.

failure to identify the witness to the February 2019 incident, and it stated that if she failed to comply with the Directive, action would be taken against her "up to and including terminating her employment."

After presenting Morrow with the Directive, Wall asked Morrow questions about the incident and to disclose the student witness information.[9] Morrow indicated she did not "feel comfortable talking about these answers until I visit with Cal [the OEA representative], and until after it's been investigated in [A.B.'s] forensic interview." When asked directly again who the student witness was, Morrow repeated that "I don't feel comfortable right now talking about it until after [A.B.'s] forensic interview." Morrow agreed with Wall that she sent the e-mail to the Sheriff's Department from her school e-mail address, and Wall reminded Morrow she was a member of the School District's staff. But Morrow explained she sent the e-mail as A.B.'s parent and not as a District staff member. She again stated, "Well, I'll visit with Cal first, and then I'll visit with the Sheriff's Department, first, and then we can meet again." She indicated she was not

_____

[9]     During the 2019-2020 school year, the Board and the Valliant Classroom Teachers' Association, the local chapter of the Oklahoma Education Association ("OEA"), entered into a Collective Bargaining Agreement, which included provisions that allowed Morrow to have a representative present during a disciplinary meeting if requested and allowed for her to request that a conference be rescheduled to secure a representative.

refusing to answer the questions, but she did not plan to answer them "this second" until after A.B. was interviewed by a professional and she spoke with her representative. Morrow asked for a copy of Wall's questions, and he provided them.[10] Wall then stopped the meeting, but in addition to telling Morrow she could speak with the representative, he also told her he was "going to suspend [her] with pay" and would send her a letter.

Although the witness referenced in Morrow's e-mail was the same student witness, M.J., who she had previously identified to the School District in February of 2019, and who was interviewed during the investigation, Morrow never explained to the District during the meeting that it was the same witness. She testified once she was suspended, she did not have the opportunity to disclose any additional information regarding A.B.'s October 2019 disclosure.

Wall never contacted the Sheriff's Department about A.B.'s October disclosure because it had already been notified. The investigative materials in the record show that shortly after the meeting with Morrow on November 7, 2019, Wall and Smith re-interviewed students about the new allegations, and Wall spoke to

---

[10]     Wall testified he prepared five or six questions to ask Morrow. He stated that with the exception of a question asking about the name of the witness, his questions were already answered in Morrow's e-mail and its attachment - the report Morrow made to the Sheriff's Department - and he was merely seeking to clarify "what exactly happened in February of 2019, because this was a completely new and different story." Docket Entry #66-6, p. 6.

the basketball coach.[11]

On November 8, 2019, A.B. participated in a forensic interview at Kidz Kottage in Idabel, Oklahoma, in connection with the allegations against K.C. According to Morrow's testimony, the Valliant Police Department and the Sheriff's Department both provided their investigation reports to the district attorney who declined to file charges against K.C. related to the incident.

Additionally, on November 8, 2019, Wall issued a letter to Morrow officially suspending her with full pay and benefits from her employment with the School District. Then on November 20, 2019, he issued a Recommendation for Dismissal on the statutory grounds of "willful neglect of duty," including as a reason Morrow's failure to disclose the identity of the witness. That same day, a Notice of Hearing was issued notifying Morrow that the Board would hold a hearing on the Recommendation for Dismissal. Morrow's due process hearing before the Board was held on January 20, 2020, and then continued on March 2, 2020. At the March 2 hearing, Morrow testified the student witness referenced in her November 5 e-mail was the same student witness she had disclosed to the District in February of 2019.

At the conclusion of Morrow's due process hearing, the Board rejected the Recommendation for Dismissal and determined Morrow

---

[11]     *See* <u>Docket Entry #71-1</u>; <u>Docket Entry #72-1</u>.

should immediately return to employment within her certification. When she returned to work in March 2020, Wall assigned Morrow to an in-school suspension classroom for the remainder of the school year. She continued to be paid while suspended, and she never suffered a reduction in pay during the entire process. For the 2021-2022 school year, she planned to return to the classroom as a teacher, an opportunity she was offered by the School District's new superintendent.

At the time of the February 2019 incident involving A.B. and K.C., the School District had in place a policy regarding the Sexual Harassment of Students.[12] Moreover, the student handbook also set forth investigation procedures once a complaint of sexual harassment was received.

### Procedural Background

Morrow filed a Complaint in this Court on July 24, 2020. On September 15, 2020, she filed an Amended Complaint, alleging her own claims and claims on A.B.'s behalf against the School District and Wall, Smith, and Pratt, in their individual capacities (collectively referred to herein as "the Individual Defendants"). Morrow brought the following claims for A.B.: (1) violation of Title IX of the Education Amendments of 1972 (School District);

---

[12]    To the extent Plaintiffs challenge whether the School District had a sexual harassment policy in effect at the time of the February 2019 incident, it had such a policy. The policy in the record indicates it was originally adopted in October of 2013 and revised in September of 2020.

(2) violation of Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") for retaliation (School District); (3) violation of A.B.'s Fourteenth Amendment equal protection rights under 42 U.S.C. § 1983 (School District and Individual Defendants); (4) violation of A.B.'s Fourteenth Amendment substantive due process rights (danger creation) under 42 U.S.C. § 1983 (School District and Individual Defendants); (5) violation of A.B.'s First Amendment rights under 42 U.S.C. § 1983 for retaliation (School District and Wall); and (6) negligence (School District).

Morrow also brought her own claims for: (1) violation of Title IX for retaliation (School District); (2) violation of the ADA and Section 504 for retaliation (School District); (3) violation of First Amendment rights under 42 U.S.C. § 1983 for retaliation (School District and Wall); and (4) breach of contract (School District).

The parties have filed cross-motions for summary judgment with Plaintiffs seeking summary judgment for certain claims and the School District and the Individual Defendants seeking summary judgment on all of Plaintiffs' claims.

## Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Universal Money Centers v. A.T. & T.*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Applied Genetics v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted). The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P.

56(c)(1)(A), 56(e)(2), 56(e)(3). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Further, "the court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## Plaintiffs' Federal Claims

### 1.  Title IX – Sexual Discrimination against School District (A.B.)

In support of A.B.'s Title IX claim, Morrow contends the undisputed facts show that prior to the February 2019 incident with A.B., K.C. was known by appropriate school officials to be a "problem" and a "troublemaker," and to be aggressive toward other students, including A.B. She asserts such conduct provided the School District with actual knowledge that K.C. posed a substantial risk of sexually harassing its students.

Title IX of the Education Amendments of 1972 states that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "A school recipient of federal funds may be liable under Title IX for

17

its own conduct in being deliberately indifferent to student-on-student sexual harassment." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008), citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). "A school district may be liable under Title IX provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school. *Id.*, citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).

Although there is some disagreement in the district courts "whether notice of prior complaints [of sexual harassment] as opposed to notice of the current harassment for which redress is sought triggers liability under Title IX[,]" *see Rost*, 511 F.3d at 1119, the case law is clear that even under the more "permissive approach," K.C.'s prior conduct and Wall's description of K.C. as a "troublemaker" did not provide the School District with the actual knowledge required under Title IX. The evidence provides no indication that K.C.'s prior conduct involved a sexual component. *See Williams v. Indep. Sch. Dist. No. 5 of Tulsa Cnty., Okla.*, 2021 WL 1646523, at *6 (N.D. Okla., April 27, 2021) ("Plaintiff points to no incidents prior to September 2017 that could possibly be construed as having an element of sexual harassment or discrimination based on sex. Therefore, these incidents did not

18

trigger Title IX."), citing *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1309-1311 (10th Cir. 2020) (explaining that Title IX requires allegations of discrimination "on the basis of sex" and that gender-neutral harassment unrelated to sexual misconduct does not implicate Title IX); *see also Whitley v. Indep. Sch. Dist. No. 10 of Dewey Cnty., Okla.*, 2019 WL 7667329, at *5 (W.D. Okla., April 22, 2019) ("Title IX does not provide for liability to be imposed due to any type of student-on-student harassment. Under Title IX, the prohibited discrimination does not include bullying, but the prohibited discrimination does include sexual harassment.").

As Morrow points out, however, it is undisputed by the School District that it had actual knowledge of the alleged incident between A.B. and K.C. on February 20, 2019, when Morrow notified Gross and Smith. Morrow maintains that after learning of the incident, the School District acted with deliberate indifference by failing to conduct a "legitimate investigation."

"A [school] district is deliberately indifferent to acts of student-on-student harassment "only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Rost*, 511 F.3d at 1121, citing *Davis*, 526 U.S. at 648. The standard does not require "flawless investigations or perfect solutions." *Id.* at 1122; *see also Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st

Cir. 2007) ("Title IX does not require education institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by parents."), *rev'd on other grounds*, 555 U.S. 246 (2009). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

Moreover, "schools need not expel every student accused of sexual harassment to protect themselves from liability, and "'victims of peer harassment [do not] have a Title IX right to make particular remedial demands.'" *Rost*, 511 F.3d at 1123, quoting *Davis*, 526 U.S. at 648. When determining whether a school district acted with deliberate indifference, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. Thus, "[t]he standard is not that schools must 'remedy' peer harassment, but that they must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Rost*, 511 F.3d at 1123 (quotation omitted).

The undisputed facts establish the School District investigated the February 2019 incident. Smith and Pratt, along with the Valliant Chief of Police, conducted student interviews, and student statements were taken regarding the incident. The investigation materials included in the record substantiate that an investigation was conducted. Although Morrow challenges the

investigation's legitimacy on several grounds, *i.e.*, the lack of training of the Individual Defendants to conduct an investigation, Pratt's lack of knowledge about the details of the incident, Pratt's memory of who was interviewed, Pratt's belief that nothing happened, and interviewing A.B. without Morrow present, none of these issues amounts to deliberate indifference. Perhaps with the benefit of hindsight, Defendants would have handled the investigation differently (and better), but any mistakes made constitute negligence and not deliberate indifference.

Further, the evidence shows that at the conclusion of the investigation, A.B.'s allegations remained unproven, which precluded the School District from taking disciplinary action against K.C. The School District did, however, allow for a paraprofessional to escort A.B. to his classes until he no longer wanted someone to do so, and it allowed for a paraprofessional to accompany A.B. during his last two classes of the day until the end of the school year.

Finally, to the extent Morrow asserts the School District was deliberately indifferent to A.B.'s report of additional details in October of 2019, the School District did not act with deliberate indifference. The School District attempted to gather additional information from Morrow during the November 7, 2019 meeting, which was prompted by her November 5 e-mail notification. Moreover, the investigative materials in the record show the students who were

21

interviewed in February of 2019 were re-interviewed by Smith and Wall shortly after the November 2019 meeting with Morrow.

Because Morrow cannot establish that the School District acted with deliberate indifference when investigating the incident between A.B. and K.C., the Court need not consider the other elements of A.B.'s Title IX claim. The School District is entitled to summary judgment.

**2.     Title IX – Retaliation against School District (Morrow)**

Morrow alleges the School District retaliated against her and A.B. for reporting the sexual harassment by K.C.[13] Morrow asserts the School District retaliated by allowing K.C. to remain at school, which resulted in A.B. being fearful and having to take action to avoid K.C., and by never disciplining K.C. Moreover, she contends that once the additional information was reported to the School District, it still took no action against K.C. Further, Morrow asserts the District retaliated against her for reporting the new allegations to the Sheriff's Department by suspending her, even after she stated she was uncomfortable answering questions and wanted to wait until after A.B.'s forensic interview and until after she spoke to her OEA representative. Even though the Board

---

[13]     The Court would note that the Amended Complaint alleges the Title IX retaliation claim on behalf of Morrow only. *See* Docket Entry #17, p. 12-13. Yet Plaintiffs' Partial Motion for Summary Judgment and the Response to the School District's Motion, make allegations that both A.B. and Morrow were retaliated against for reporting K.C.'s conduct. Because the resolution of Morrow's claim encompasses any claim by A.B., the Court has addressed it herein.

did not uphold Wall's recommendation for her dismissal, Morrow was reassigned to the position of in-school suspension supervisor.

Title IX prohibits retaliation against individuals who have complained of sex discrimination. *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017), citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005). The retaliation must be orchestrated by the School District, or it must have known of the harassment, acquiesced in it, or condoned it. *Miles v. Washington*, 2009 WL 259722 (E.D. Okla., Feb. 2, 2009).

When retaliation cannot be directly established, a plaintiff must rely on the three-step burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Hiatt*, 858 F.3d at 1315 n.8. Under *McDonnell Douglas*, a plaintiff first must set forth a *prima facie* case of retaliation by showing (1) he or she engaged in protected activity, (2) the defendant had knowledge of that activity, (3) materially adverse school-related action was taken against the plaintiff, and (4) a causal connection existed between the protected activity and the adverse action. *See Doe v. Brighton Sch. Dist. 27 J*, __ F.Supp.3d __, 2020 WL 886193, at *7-8 (D. Colo., Feb. 24, 2020); *Hiatt*, 858 F.3d 1316. If a plaintiff establishes a *prima facie* case, then the burden shifts to defendant to articulate a legitimate, non-retaliatory basis for its decision. *Hiatt*, 858 F.3d 1316. If the defendant does so, the inference of retaliation drops out and the burden shifts back to

23

the plaintiff to show that the defendant's proffered reason is pretextual. *Id*.

The School District argues it is entitled to summary judgement on Morrow's retaliation claim because she has failed to establish the District's actions were adverse or that they were related to the reporting of the incident. The Court finds the School District did not retaliate against Morrow (or A.B.) by allowing K.C. to remain at school or by failing to discipline him. Title IX specifically does not require schools to "expel every student accused of sexual harassment to protect themselves from liability," and victims of peer harassment do not have a "Title IX right to make particular remedial demands." *Rost*, 511 F.3d at 1123. The evidence establishes the School District investigated the allegations against K.C. and could not substantiate them. Even though the District allowed for K.C. to remain at school, it allowed for A.B. to have a paraprofessional with him. Once Morrow brought the new information to the District's attention, it attempted to further investigate. Moreover, K.C. was not at school after the additional report because he was suspended for hitting a teacher. Morrow does not assert further incidents occurred after she reported the additional information.

Morrow also asserts she was suspended in retaliation for reporting the additional information. To constitute materially adverse employment action, an action must be sufficient to "have

24

dissuaded a reasonable [person] from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The evidence shows Morrow was suspended with pay after she refused to disclose the identity of the student witness. Case law supports that a reasonable person could not find the suspension materially adverse when he/she suffered no loss of pay or benefits during the suspension period and did not allege any harm arising from the suspension. *See Parker v. United Airlines, Inc.*, 2021 WL 3206777, at *5 (D. Utah, June 28, 2021) (evaluating the plaintiff's *prima facie* case for an FMLA retaliation claim and finding that "a reasonable employee could not find suspension materially adverse when [the plaintiff] suffered no loss of pay or benefits during the suspension period" and "d[id] not describe any harm arising from her suspension with pay and benefits."). Morrow, however, has alleged there was a public aspect to the allegations against her (the Board hearing) and that she was reassigned to another position at the conclusion of the disciplinary process.

The undisputed facts show the Board voted against Wall's recommendation for dismissal, and Morrow was reassigned to the in-school suspension supervisor position. There was no reduction in pay or benefits associated with her reassignment. *See Burlington Northern*, 548 U.S. at 71 ("To be sure, reassignment of job duties is not automatically actionable."); *Sanchez v. Denver Pub. Schs.*,

164 F.3d 527, 532 (10th Cir. 1998) (holding there was no adverse employment action where a fourth-grade teacher was reassigned to a school further from her home to teach second grade, but paid the same salary and benefits); *compare Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1275 (10th Cir. 2010) (holding there was adverse employment action where the school district reassigned school executive to elementary school principal, reduced vacation benefits immediately, and then reduced salary and retirement benefits after one year).

Even though the Court finds that there is some support for the District's argument that Morrow did not suffer a materially adverse action, for purposes of ruling on the Title IX retaliation claim, the Court assumes Morrow has established a *prima facie* case. This Court also finds that the School District has offered a legitimate, non-retaliatory reason for the disciplinary action taken against Morrow - Morrow was suspended and subjected to the disciplinary process only after she refused to identify the "new" witness, which the School District maintains impeded its investigation of the sexual assault allegations. Morrow's burden is to demonstrate pretext - that the School District's reason "is unworthy of belief by a rational factfinder because of incoherence, weaknesses, inconsistencies, or contradictions." *Townsend-Johnson v. Rio Rancho Pub. Sch.*, 568 Fed. Appx. 542, 543 (10th Cir. 2014) (citation omitted).

In *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261 (10th Cir. 2015), the Tenth Circuit discussed the importance of focusing on the facts as they appear to the decision maker when evaluating pretext:

> [I]n evaluating alleged pretext we must consider the facts as they appeared to the decision-makers. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007). We will not second-guess an employer's business judgment or replace its opinion of best practices with either an employee's opinion or our own. *Garrison v. Bambro, Inc.*, 428 F.3d 933, 938 (10th Cir. 2005). Thus, we do not ask whether an employer's decisions were wise or fair; we ask only 'whether the employer honestly believed its reasons and acted in good faith upon them.' *Riggs*, 497 F.3d at 1118-19.

*Id.* at 1268. "'Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision.'" *Riggs*, 497 F.3d at 1119, quoting *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007).

The Court finds Morrow has not demonstrated the District's actions were pretext for retaliation against her for reporting A.B.'s complaints of sexual harassment. Although the actions were close in time to her report, this alone does not establish that the reason for suspending her, seeking her dismissal, and reassigning her to a different job is pretext for retaliation. *See Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009) ("[T]emporal proximity alone is not sufficient to defeat summary judgment by showing that the employer's proffered reason is actually pretext for retaliation.").

The evidence shows that after Morrow's original report to the Valliant Police Department and to the District, the incident was investigated, and even though it did not corroborate A.B.'s allegations, the District provided A.B. with a paraprofessional at Morrow's request. Morrow was told by the Sheriff's Department that she did not have to report the new allegations to the District, and she indicated she did not plan to do so. Yet Morrow notified the School District of the new allegations on November 5, 2019, by e-mail, including as an attachment a copy of her written report to the Sheriff's Department. Her e-mail referenced that another student athlete witnessed the event, but she declined to name the student. In light of the School District's own legal obligation to investigate the new allegations, Wall set up a meeting with Morrow, primarily to determine the identity of what the District believed was a "new" witness.

The evidence also shows Morrow had previously received a PDP for several reasons, including her failure to report information pertaining to the "suspected abuse or mistreatment of District students to administration," and she had been advised to continue compliance in the future. Although she complied with the prior PDP, Morrow remained subject to its requirements for the duration of her employment with the District. The Directive provided to Morrow during the November 7, 2019 meeting, referenced the PDP's requirements and directed her to disclose the identity of the "new"

witness. Morrow knew she had already disclosed this witness to the District in February of 2019, but she did not inform the District of this information. Morrow instead indicated she would not discuss the new allegations or the identity of the witness until after A.B.'s forensic interview, which was the next day, and until after she spoke to the OEA representative.

Morrow has failed to show the School District's actions were anything more than a response to her failure to disclose the identity of the witness, which impeded the District's obligation to conduct its own investigation.[14] She has failed to show the suspension, Wall's recommendation for dismissal, or her reassignment to another position was pretext for retaliation in response to her report of the sexual harassment allegations. The School District is entitled to summary judgment on Morrow's IX retaliation claim.

### 3.    ADA/Section 504 — Retaliation against School District (A.B. & Morrow)

Retaliation claims under the ADA and Section 504 of the Retaliation Act utilize the same standard when there is no direct evidence of retaliation — the *McDonnell Douglas* burden-shifting framework. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). A plaintiff may establish a *prima*

---

[14]    The investigation materials in the record show the District investigated the new allegations. Following the meeting with Morrow, Wall and Smith re-interviewed students and Wall spoke to the basketball coach.

*facie* case of ADA/Section 504 retaliation by showing: "(1) that she engaged in protected activity; (2) that she suffered a materially adverse action by [the school district] either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action." *Id.*, quoting *Proctor v. U.P.S.*, 502 F.3d 1200, 1208 (10th Cir. 2007). A school district "may [then] produce evidence of a legitimate, nonretaliatory reason for the adverse action." *Id.* (citation omitted). If it does so, "the burden shifts back to [the plaintiff] to show that the proffered reason is pretextual." *Id*.

For purposes of A.B.'s ADA/Section 504 claim, Morrow makes virtually identical arguments to those she made in support of the Title IX retaliation claim. Accordingly, for the same reasons discussed in relation to the Title IX retaliation claim, the Court finds the allegations do not constitute retaliation against A.B. under the ADA or Section 504.

Morrow does, however, assert an additional allegation of retaliation against A.B. in support of his ADA/Section 504 claim – that the District retaliated against A.B. by limiting his independence, which was a goal listed in his IEP. Although the evidence shows A.B.'s IEP included such a goal, to the extent Morrow is arguing that assigning a paraprofessional to A.B. interfered with that goal, the Court finds the District's action does not constitute retaliation. The undisputed facts show a

30

paraprofessional accompanied A.B. to his classes at Morrow's request. Once A.B. felt safer, *e.g.*, Morrow testified that paraprofessionals only accompanied A.B. to and from his classes for one month because he felt safer, the paraprofessionals stopped escorting him. The School District is therefore entitled to summary judgment on A.B.'s ADA/Section 504 retaliation claim.

Regarding Morrow's ADA/Section 504 retaliation claim, the Court previously discussed in detail why the School District's actions against Morrow did not amount to retaliation for reporting the allegations of sexual assault. The same analysis applies to Morrow's ADA/Section 504 claim as that used to determine the Title IX retaliation claim. The Court will not repeat that analysis here, and therefore finds for the same reasons set forth herein regarding the Title IX retaliation claim, the School District is entitled to summary judgment on Morrow's ADA/Section 504 claim for retaliation.

### 4.    Section 1983 Claims against the School District and Individual Defendants

#### a.    Municipal Liability

Municipal liability of a governmental entity does not arise under § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Liability may only be imposed upon a governmental entity "when the enforcement of [its] policies or customs by [its] employees causes

31

a deprivation of a person's federally protected rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). To establish municipal liability, a plaintiff must show: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

### b. Qualified Immunity

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity," *Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013), which "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law," *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). "When properly applied, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. A court has discretion as to which of the two prongs to address first based upon the circumstances of the case. *Brown v. Montoya*, 662 F.3d 1152, 1164

32

(10th Cir. 2011). "[I]f the plaintiff fails to establish either prong of the two-pronged . . . standard, the defendant prevails on the defense." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation omitted).

### c.   Equal Protection against School District and Individual Defendants (A.B.)

Morrow asserts A.B.'s Fourteenth Amendment equal protection rights under § 1983 were violated by the School District's custom of failing to receive, investigate, or act on complaints of sexual harassment. She contends the School District, through the conduct of the Individual Defendants, acted with deliberate indifference to known sexual harassment by failing to protect A.B. from sexual harassment and by failing to properly investigate his claims, which deprived him of his property interest in continued education. Morrow maintains the investigation by the Individual Defendants was inadequate because they lacked training on how to conduct such investigations and on how to interview witnesses. Morrow further contends that her questioning by Wall after A.B.'s October 2019 report of the new allegations was deliberately indifferent because the law enforcement investigation of the incident was ongoing.

"The Fourteenth Amendment provides that '[n]o state shall . . . shall deny to any person within its jurisdiction the equal protection of the laws.'" *Rost*, 511 F.3d at 1124, quoting U.S. Const. amend. XIV, § 1. "Denials of equal protection by a municipal

entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983." *Murrell*, 186 F.3d at 1249. To establish a school district's liability for sexual harassment under the Fourteenth Amendment, a plaintiff must show a policy or custom of deliberate indifference to sexual harassment. *Id*. "[A] governmental official or supervisory employee may be liable under [§] 1983 upon a showing of deliberate indifference to known sexual harassment." *Id*. at 1250.

Here, as discussed in relation to the Title IX claim, A.B. has failed to establish that the Individual Defendants acted with deliberate indifference to his complaints.[15] Moreover, Plaintiffs have failed to show that "any Defendant intentionally discriminated against A.B. on the basis of his gender." *See Payne v. Vian Pub. Schs.*, 2018 WL 4265212, at *12 (E.D. Okla., Sept. 6, 2018); *see also Sauers v. Salt Lake County*, 1 F.3d 1122, 1130 (10th Cir. 1993) ("'A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent.'"), quoting *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).

---

[15]    To the extent Plaintiffs allege a custom or policy by the School District for the failure to train or supervise employees, they have not established a custom or policy nor have they shown deliberate indifference through the failure to train or supervise employees to respond to sexual harassment. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (noting it is not enough to show that more or better training or supervision may have helped to avoid the injury); *see also Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (finding that a training deficiency must be the "moving force" behind the injury alleged).

All of this is not only fatal to A.B.'s equal protection claim against the School District, as there is no constitutional violation by the Individual Defendants, but it is also fatal to A.B.'s claim against the Individual Defendants, as they are entitled to qualified immunity. The School District and the Individual Defendants are entitled to summary judgment on A.B.'s equal protection claim.

### d. Substantive Due Process against School District and Individual Defendants (A.B.)

Morrow asserts the evidence shows the School District, through the actions of the Individual Defendants, created a dangerous environment for A.B. in violation of his substantive due process rights under § 1983. Morrow again relies on the same evidence that she has relied upon in support of her other claims.

To prevail on a substantive due process claim, the Tenth Circuit has held that state officials can be liable for the acts of third parties where those officials "created the danger" that caused the harm. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1985), *cert. denied*, 516 U.S. 1118 (1996). A claim brought under the danger-creation theory, however, must be predicated on "reckless or intentional injury-causing state action which 'shocks the conscience.'" *Id.* "'[I]t is not enough to show that the state increased the danger of harm from third persons; the [§] 1983 plaintiff must also show that the state acted with the requisite

35

degree of culpability in failing to protect the plaintiff.'" *Id.* at 573 (citation omitted). "That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 574.; *see also Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996). "[O]nly the most egregious official conduct" satisfies the conscience shocking standard. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

The conduct of the Individual Defendants in this action does not shock the conscience of this Court. Thus, Morrow has failed to show that A.B. was deprived of his substantive due process rights. The Individual Defendants are therefore entitled to qualified immunity and summary judgment on this claim. Moreover, because there is no constitutional violation, the School District is also entitled to summary judgment.

e.   **First Amendment Retaliation against School District and Wall (A.B. & Morrow)**

Morrow asserts the School District and Wall retaliated against A.B. for reporting the incident with K.C., by allowing K.C. to remain on campus, which resulted in A.B.'s being fearful at school. Morrow contends that such action would certainly "chill" A.B. from reporting any further abuse.

To establish a First Amendment claim based on retaliation, A.B. must demonstrate: (1) that he engaged in constitutionally protected activity; (2) the School District, through Wall, caused

36

him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action by Wall was substantially motivated by A.B.'s constitutionally protected conduct. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

The evidence shows Wall did not engage in any adverse action against A.B. based upon his protected activity. As previously discussed, the School District investigated the incident and took precautions to protect A.B. Moreover, any conduct by Wall clearly did not "chill" A.B. from reporting additional allegations as he did so in October of 2019. For these reasons, A.B.'s retaliation claim fails. Because there is no constitutional violation, Wall is entitled to qualified immunity, and both the School District and Wall are entitled to summary judgment on A.B.'s First Amendment retaliation claim.

Morrow further asserts the School District, through Wall, violated her First Amendment rights by retaliating against her for reporting A.B.'s alleged sexual assault by K.C. to law enforcement. She raises the same allegations of retaliation that she did in support of her previous retaliation claims, *i.e.*, she was suspended, subjected to a public Board hearing, and reassigned to another position. As an employee of the School District, Morrow's First Amendment retaliation claim is evaluated under the

*Garcetti/Pickering*[16] analysis, which includes the following five elements: "(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014).

Although the School District and Wall do not concede any elements of the five-pronged test, they focus their argument on the fourth element asserting that Morrow's report to law enforcement about the alleged sexual assault of A.B. was not a "motivating" factor in the disciplinary decisions made by Wall. Thus, for purposes of this Order, the Court assumes Morrow can satisfy the first three elements and will focus on the fourth. Summary judgment is appropriate on the fourth element if there "is

---

[16] *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Board of Educ.*, 391 U.S. 563 (1968).

no evidence in the record from which a trier of fact could reasonably conclude the [protected speech] was a motivating factor in [any adverse action taken against a plaintiff]." *Rohrbough v. University of Colo. Hosp. Auth.*, 596 F.3d 741, 750 (10th Cir. 2010).

At the fourth step of the analysis, "the employee has the initial burden of establishing causation – that is, to show the exercise of constitutionally protected speech was a substantially motivating factor in the employer's decision to adversely alter the employee's conditions of employment." *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005). Although the speech need not be the sole reason for a defendant's action, an employee "must show the protected speech played a substantial part in the employer's decision to adversely alter the employee's conditions of employment." *Id.* (citing cases). To overcome summary judgment at this step, "an employee must produce evidence linking the employer's action to the employee's speech." *Id.* Although "[a]dverse action in close proximity to protected speech may warrant an inference of retaliatory motive[,] . . . [t]emporal proximity is insufficient, without more, to establish such speech as a substantial motivating factor in an adverse employment decision." *Id.* at 1189. Moreover, "evidence of intervening events . . . tend to undermine any inference of retaliatory motive and weaken the causal link." *Id.* (citation omitted).

Here, as previously discussed herein, there is no evidence Wall engaged in any retaliatory action toward Morrow after she initially reported the incident in February of 2019. Moreover, the evidence establishes Morrow's report of the new allegations of sexual assault to the Sheriff's Department was not a substantial motivating factor in Wall's disciplinary decisions. Wall suspended Morrow and recommended her dismissal to the Board because she refused to identify what the District believed was a new witness, which impeded the District's investigation. Morrow had previously disclosed the witness, but she failed to inform the District that it was the same witness. The evidence establishes Morrow failed to disclose information in the past regarding another student, an infraction for which she received a PDP, and Morrow was required to follow the PDP's directives throughout her employment with the District. Wall's decision to seek her dismissal was consistent with the terms of Morrow's PDP. Moreover, the Board voted not to dismiss Morrow but instead determined she should return to work within her certification. Morrow has not come forth with any evidence that Wall's decision to assign her to the in-school suspension supervisor position, a position in which she did not suffer a reduction in pay or benefits, was in any way motivated by her report to law enforcement. Because Morrow has failed to show that her protected speech was a substantial motivating factor in the employment actions taken against her, she cannot establish a

First Amendment retaliation claim against the School District or Wall. They are entitled to summary judgment on the claim.

### State Law Claims Against School District

Plaintiffs also assert two state law claims against the School District. A.B. asserts a claim for negligence, while Morrow asserts a claim for breach of contract. A federal court, however, "may decline to exercise supplemental jurisdiction when . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(3). Because the federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (citation omitted); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The state law claims for negligence and breach of contract are therefore dismissed.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Docket Entry #60) is hereby **DENIED**. Defendant School District's Motion for Summary Judgment (Docket Entry #61) and the Individual Defendants' Motion for Summary Judgment (Docket

Entry #62) are hereby **GRANTED**. Judgment will be entered for Defendant School District and the Individual Defendants Wall, Smith, and Pratt accordingly.

IT IS FURTHER ORDERED that the Pretrial Conference set for February 7, 2023, is hereby **STRICKEN**.

IT IS SO ORDERED this 6th day of February, 2023.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE